# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| LOUIS MCCOY | CIVIL ACTION NO. 07-2147 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CLAIBORNE PARISH DETENTION CENTER, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are two Motions for Summary Judgment (Record Documents 88 and 90) filed by Defendants in this matter. The first motion (Record Document 88) was filed by Warden Cora Sue Holliday ("Warden Holliday"), Assistant Warden John Goodwin ("Assistant Warden Goodwin"), Chief of Operations Leroy Holliday ("Chief Holliday"), and LaSalle Management Company, LLC ("LaSalle"). The second motion (Record Document 90) was filed by Claiborne Parish Sheriff Ken Bailey ("Sheriff Bailey"). Defendants seek dismissal of all claims. Plaintiff Louis McCoy ("McCoy") opposed the Motions for Summary Judgment. See Record Document 98. For the reasons which follow, the Motions for Summary Judgment are **GRANTED** and all of McCoy's claims are **DISMISSED**.

## BACKGROUND[1]

This is a racial discrimination suit filed by McCoy, a former officer at the Claiborne Parish Detention Center ("CPDC"). McCoy, a black male, began working at the CPDC in

---

[1] Defendants filed Statements of Uncontested Facts. See Record Documents 88-6 and 90-1. In response, McCoy filed a Statement of Disputed Facts. See Record Document 98-1.

McCoy's filing does not explicitly controvert the facts asserted by Defendants, as required by Local Rule 56.2. Instead, he simply lists 12 "disputed facts." The Court is left to assume that McCoy has listed only facts that he wishes to dispute. By implication, he appears to be admitting all other facts asserted by Defendants in their Statements of Uncontested Facts. Therefore, much of the background section of the instant ruling has been drawn from Defendants' Statements of Uncontested Facts.

April 2001 as a floor deputy. After two years, he was promoted to Sergeant and received a pay increase. In 2004, he was promoted to Lieutenant and again received a pay increase. On November 7, 2005, he was promoted to Captain and received another pay increase. He held this rank until May 10, 2006, when he was demoted two ranks to sergeant. He was terminated from employment on June 9, 2006.

Sheriff Bailey entered into a lease agreement with LaSalle for the day-to-day operations of the CPDC. At all relevant times, the CPDC was staffed with a warden, an assistant warden, a major (sometimes referred to as "chief of security"), a captain, four lieutenants, and multiple sergeants and deputies. The CPDC has four shifts: two day shifts from 6:00 a.m. to 6:00 p.m. and two night shifts from 6:00 p.m. to 6:00 a.m. The top four officials at the CPDC, i.e., the Warden, Assistant Warden, Major, and Captain, generally worked 8:00 a.m. to 4:00 p.m., although their hours could vary depending on the needs of the facility.

The warden is the highest ranking on-site official at the CPDC.[2] She has full authority to hire, fire, promote, and make other employment related decisions. Her decisions are subject to veto by the Sheriff.

According to McCoy, he began experiencing problems at work on April 12, 2006, when a routine shakedown of the inmate dorms produced contraband, namely homemade weapons known as shanks. Regional Warden Leroy Holliday was upset about the contraband and called a meeting with Warden Holliday, Assistant Warden Goodwin, Major

---

[2] Gary Allen, a black male, was warden at the CPDC until 2005. He was replaced by Cora Sue Holliday, a white female. She left in 2007 and was replaced by Johnny Sumlin, a black male. Johnny Sumlin remains as the current warden.

James Banks ("Major Banks"), and McCoy, along with a warden of another correctional facility outside of Claiborne Parish. During the meeting, McCoy informed Regional Warden Leroy Holliday that the inmates were making the weapons because they were scared and felt the need to defend themselves. According to McCoy, Regional Warden Leroy Holliday told him to "shut up."  McCoy persisted and was sent home.  The meeting continued without McCoy.

During the meeting, those present agreed that the night shift was getting lax.  McCoy was asked to help train the employees on the night shift; thus, his shift was changed from 8:00 a.m. to 4:00 p.m. to 4:00 p.m. to midnight.  McCoy did not suffer any decrease in his wage rate or benefits as a result of this change in hours and he still held the rank of Captain.

According to McCoy, within a day or so of the meeting and his shift change, he went to Sheriff Bailey to complain about what happened.  Sheriff Bailey told McCoy not to worry about what happened and that he would talk with the warden, which he did.  McCoy never complained to Sheriff Bailey that he felt he was being discriminated against because of his race.

McCoy called in sick on April 22, 2006 due to sinus problems.  The CPDC's policy requires all employees to bring a doctor's excuse before they return to work.  McCoy reported to work on April 23, 2006.  Assistant Warden Goodwin asked for McCoy's doctor's excuse, which McCoy could not produce.  McCoy was sent home without pay. McCoy later spoke with Warden Holliday, maintaining that he should have gotten a write-up for the policy violation since it was his first offense and because the policy was not uniformly enforced.  She agreed and revoked McCoy's one-day suspension.  Instead, she issued him

a written reprimand.

On May 4, 2006, McCoy mistakenly released an inmate who was being held on two pending charges, simple arson and failure to appear, based on documents faxed by the Sheriff's Office indicating that the inmate had posted a $30,000 bond on the arson charge. McCoy prepared a release report showing that the inmate bonded on both charges. Assistant Warden Goodwin recommended that McCoy be terminated because of this incident, but Warden Holliday disagreed and changed the discipline to a demotion by two ranks. Warden Holliday promoted Alicia Lewis, a black female, to replace McCoy as captain.

In early June 2006, Warden Holliday received some complaints from other employees regarding tensions being caused by McCoy on the C-Team night shift. Some complaints suggested possible racial hostility by McCoy toward white employees. Warden Holliday made the decision to have two outside individuals come in to investigate the matter and interview the employees from that shift, including McCoy. Deputy Warden William Savage ("Deputy Warden Savage"), a black male, from the Richwood Correctional Center, and Captain Janice Little ("Captain Little"), a white female, from the Catahoula Correction Center, were the investigators who agreed to assist in the internal matter at CPDC. They arrived on June 7, 2006 to begin their investigation.

On June 7, 2006, Assistant Warden Goodwin phoned McCoy several hours prior to his scheduled shift start and told him not to report to duty that evening. Instead, he was to report to the CPDC at 9:00 a.m. on June 8, 2006 for questioning. On the morning of June 8, McCoy arrived at the CPDC and was met by Warden Holliday and Assistant Warden Goodwin. They took him to Warden Holliday's office, which is where the interviews were

taking place, and then left so that Deputy Warden Savage and Captain Little could talk with him directly. According to McCoy, he demanded to know what the investigation was about and refused to answer any questions unless his attorney was present. After about five to ten minutes of refusing to answer questions without his attorney present, McCoy walked out of the office and left the CPDC without informing Warden Holliday or Assistant Warden Goodwin that he was leaving.

Upon learning of McCoy's misconduct, Captain Alicia Lewis ("Captain Lewis") prepared a Violation Report based on McCoy's refusal to cooperate and leaving the CPDC without authorization. After reviewing the report, Major Banks recommended that McCoy be terminated from employment. Both Major Banks and Captain Lewis are black. Both Assistant Warden Goodwin and Warden Holliday affirmed Major Banks' recommendation and McCoy was terminated effective immediately. After his termination, McCoy did not contact Sheriff Bailey to appeal the termination decision or otherwise complain that he felt he was being discriminated against because of his race.

## LAW AND ANALYSIS

**I.    Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv. Corp., — F.3d —, No. 09-20188, 2010 WL 5188825, at *2 (5th Cir. Dec. 23, 2010). "Rule

---

[3] The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

**II.    Section 1983, Section 1985, Section 1986, and Equal Protection Claims.**

McCoy contends that Defendants have violated 42 U.S.C. §§ 1983, 1985, and 1986 and the Equal Protection Clause of the United States Constitution. See Record Document 56 at ¶ 15. Defendants move for dismissal of these claims, arguing that they are time-barred.

When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations." Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S.Ct. 1836, 1839 (2004). If state law will determine the applicable period, Louisiana's one-year prescriptive period for torts applies. See Bourdais v. New Orleans City, 485 F.3d 294, 298 (5th Cir.2007); see also La. C.C. Art. 3492.

Section 1986 claims are governed by a one year limitations period, as the federal statute specifically provides that "no action under the provisions of this section shall be

sustained which is not commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986. The Fifth Circuit has held that a Section 1983 claim of racial discrimination in employment is best characterized under Louisiana law as a tort and should be governed by Louisiana's one year limitations period which applies to "offenses and quasi-offenses." Jones v. Orleans Parish School Bd., 679 F.2d 32, 35 (5th Cir. 1982); Jackson v. David Wade Correctional Center, No. 07-1420, 2008 WL 4500325, *2 (W.D.La. Oct. 6, 2008). As Section 1983 provides the vehicle through which McCoy alleges his claim under the Equal Protection Clause, it too is subject to a one year statute of limitation. See Jackson, 2008 WL 4500325, *3. Louisiana's one year limitations period likewise applies to McCoy's Section 1985 claim. See id. at *2; see also Cleveland v. Union Gen. Hosp., No. 07-00119, 2007 WL 4693806, at *2 (W.D.La. Nov. 14, 2007) ("As there is no prescriptive period listed in § 1983, the forum state's prescriptive period for personal injury torts is used. Likewise, the same prescriptive period applies if the claim is brought under § 1985."); Moreno v. Curry, No. 4:06-CV-238-Y, 2006 WL 3207984, at *3 (N.D.Tex. Nov. 7, 2006) ("The personal-injury statute of limitations also applies to a claim under 42 U.S.C. § 1985."); Allen v. Winfield, No. 3:04-CV-2504-B, 2006 WL 1674096, at *3 (N.D. Tex. June 12, 2006)("[T]he rationale for applying the state personal injury limitation period to § 1983 actions applies equally to § 1985 actions."); Callwood v. Questal, 882 F.2d 272, 274 (3rd Cir.1998); McDougal v. Country of Imperial, 942 F.2d 668, 673-74 (9th Cir.1991).

"Under federal law, the [limitations] period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001). "A plaintiff's awareness encompasses two elements: (1) The existence of the injury; and (2)

causation, that is, the connection between the injury and the defendant's actions." Id. A plaintiff is not required to know that he has a legal cause of action; rather, he only needs to know the facts that would ultimately support a claim. See id., citing Harrison v. U.S., 708 F.2d 1023, 1027 (5th Cir.1983).

Here, the latest alleged discriminatory act occurred in early June 2006 when McCoy was terminated. At that time, McCoy knew of the facts that he alleges support his racial discrimination claims. He, in fact, went to the Sheriff to complain in April 2006 and also submitted his charges to the EEOC in 2006.[4] Yet, he did not file his complaint until December 11, 2007, more than eighteen months later. Thus, McCoy's Section 1983, Section 1985, Section 1986, and Equal Protection claims are time barred and summary judgment in favor of Defendants is **GRANTED**.

## III.    Individual Liability under Title VII.

It appears that McCoy has sued Defendants in both their individual and official capacities. See Record Document 56. The law is clear that McCoy is prohibited from bringing a Title VII claim against Defendants in their individual capacity. See Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir.1999) (holding that the "[Fifth Circuit] does not interpret [Title VII] as imposing individual liability"). In his opposition, McCoy seems to concede that there is no individual liability under Title VII[5] against Warden

---

[4]The filing and processing of charges with the EEOC does not toll the running of the state prescriptive period. See Taylor v. Bunge Corp., 775 F.2d 617, 619 (5th Cir. 1985); Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 465-66, 95 S.Ct. 1716, 1722-23 (1975).

[5]Section 1981 does not create a new substantive right or cause of action. See Huckabay v. Moore, 142 F.3d 233, 241 (5th Cir. 1998). Instead, the statute simply provides an additional remedy for "unlawful intentional discrimination . . . prohibited under . . . 42

Holliday, Chief Holliday, or Assistant Warden Goodwin and that the proper defendant for any Section 1981 claim is the governmental employer in his official capacity, i.e., Sheriff Bailey.  See Record Document 98 at 15-17.[6]  Therefore, based on McCoy's concessions, summary judgment is **GRANTED** as to all Title VII and Section 1981 claims against Defendants in their individual capacities.

IV.     **Racial Discrimination Claims under Section 1981 and Title VII.**

Claims of intentional discrimination brought under Title VII and Section 1981 require the same proof to establish liability.  See Byers v. Dallas Morning News, Inc., 209 F.3d 419, 422 n. 1 (5th Cir.2000); Raggs v. Miss. Power & Light Co., 278 F.3d 463, 468 (5th Cir.2002).  Therefore, McCoy's racial discrimination claims will be analyzed under the Title VII rubric of analysis.  See id.

McCoy alleges that he was discriminated against because of his race when his hours were changed to 4:00-12:00 p.m.; when he was demoted from Captain to Sergeant; and when he was terminated from employment.  McCoy has no direct evidence of racial discrimination and must prove his claims by circumstantial evidence.  See McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).  Cases built on circumstantial evidence

---

U.S.C. § 2000e-2 or 2000e-3." Id., citing 42 U.S.C. § 1981a(1)(1).  Thus, Title VII provides "the underlying substantive right, a right that prohibits conduct only by employers, employment agencies, and labor organizations." Id., citing 42 U.S.C. §§ 2000e-2, 2000e-3.  Fifth Circuit case law is clear "that the term 'employer' does not include a hiring or supervisory official in his personal or individual capacity." Id.

[6]It appears that McCoy also contends that the Claiborne Parish Detention Center, an entity that has never appeared in this matter, and LaSalle are proper defendants under Title VII and Section 1981 as government employers.  The Court will assume the legal accuracy of this argument; however, as set forth *infra*, McCoy's Title VII/Section 1981 racial discrimination claims fail on the merits.

are analyzed under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). See id. Under that framework, McCoy must first establish a *prima facie* case of discrimination, which requires a showing that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. See id.

If McCoy makes a *prima facie* showing, the burden then shifts to Defendants "to articulate a legitimate, nondiscriminatory . . . reason for [the] employment action." Id. at 557. This burden is only one of production, not persuasion, and involves no credibility assessment. See id. If Defendants meet the burden of production, McCoy "then bears the ultimate burden of proving that [Defendants'] proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose." Id. To carry this burden, McCoy "must rebut each nondiscriminatory reason articulated by [Defendants]." Id.

Here, McCoy easily meets the first two requirements of a *prima facie* case, as he is black and there appears to be no dispute that he was qualified for the positions at issue. However, requirements three and four of the *prima facie* case are more problematic.

McCoy's racial discrimination claim relating to the change in work hours fails, as he cannot establish that he suffered an adverse employment action. In the context of racial discrimination claims,[7] "adverse employment actions include only ultimate employment

---

[7]In Burlington Northern & Santa Fe Railway Co. v. White, the Supreme Court abrogated the Fifth Circuit's approach in the retaliation context in favor of a standard that defines an adverse employment action as any action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." McCoy, 492

decisions such as hiring, granting leave, discharging, promoting, or compensating." Id. at 559. With the change in work hours, McCoy did not suffer any reduction in rank, hours, pay, or benefits. Rather, his new schedule was simply not as desirable as his previous 8:00 a.m. to 4:00 p.m. shift. See Burger v. Cent. Apartment Mgmt., Inc., 168 F.3d 875, 879 (5th Cir.1999) (stating that a plaintiff's subjective preference is irrelevant under Title VII; the proper standard is an objective one); Benningfield v. City of Houston, 157 F.3d 369, 377 (5th Cir. 1998) ("Merely changing [plaintiff's] hours, without more, does not constitute an adverse employment action."). Summary judgment in favor of Defendants is **GRANTED** on the change in work hours claim.

While McCoy's demotion in rank qualifies as adverse employment action, he has not shown that he was replaced by someone outside his protected group or that he was treated less favorably than other similarly situated employees outside the protected group. It is undisputed that Captain Alicia Lewis, who is also black, was promoted to the rank of captain and took over McCoy's responsibilities after his demotion. Thus, McCoy was not replaced by someone outside his protected group. Further, while McCoy argues that white employees were not reprimanded for minor infractions whereas he was, he has failed to point to a single, non-black employee who erroneously released an inmate who was treated more favorably. See Record Document 98-1 (Affidavit of McCoy).[8] In Smith v. Wal-Mart Stores (No. 471), 891 F.2d 1177 (5th Cir. 1990), the Fifth Circuit held that in order for a claim of disparate treatment to succeed under Title VII, the plaintiff must show that the

---

F.3d at 559.

[8] Any attempt by McCoy to classify the mistaken release of an inmate as a minor infraction is simply unconvincing as a matter of law.

misconduct for which he suffered an adverse employment action "was nearly identical" to that engaged in by an employee outside the protected group whom the defendant did not subject to the same adverse employment action. See id. at 1180; see also Davin v. Delta Air Lines, Inc., 678 F.2d 567, 570–71 (5th Cir. Unit B 1982); Little v. Republic Refining Co., Ltd., 924 F.2d 93, 97 (5th Cir. 1991). The plaintiff must also rely upon more than conclusory allegations to support his claim that similarly situated individuals outside the protected class were treated more favorably than him. See Nzeda v. Shell Oil Co., No. 06-20718, 2007 WL 756452, **1 (5th Cir. March 9, 2007). Based on these principles, McCoy's racial discrimination claim based on his demotion in rank fails and summary judgment in favor of Defendants is **GRANTED** on this claim.

Likewise, while McCoy's termination qualifies as an adverse employment action, he has not shown that he was replaced by someone outside his protected group or that he was treated less favorably than other similarly situated employees outside the protected group. McCoy has pointed to no evidence that someone outside his protected group replaced him after he was terminated in June 2006. As to similarly situated employees, McCoy attests in his affidavit that a "white employee left his duty post," "left the compound without permission," and "was never punished." Record Document 98-1 at ¶ 13. Yet, even if the Court accepts this allegation as true, the white employee is not similarly situated to McCoy because this unnamed individual did not leave without permission after refusing to answer questions by investigators and refusing to cooperate in an internal investigation. See Smith, 891 F.2d at 1180 (stating that the plaintiff must show that the misconduct "was nearly identical" to that engaged in by an employee outside the protected group). As he has failed to establish the fourth element of his *prima facie* case, summary judgment in

favor of Defendants is **GRANTED** on McCoy's racial discrimination claim based on his termination.

**V.    Louisiana Revised Statute 9:51.**

McCoy contends that "[t]he Defendants . . . have undertaken to violate the laws of the State of Louisiana more specifically the Civil Rights and duties as set out in LA R.S. 9:51."  Record Document 56 at ¶ 16.  Title 9, Section 51 provides:

> Women have the same rights, authority, privileges, and immunities, and shall perform the same obligations and duties as men in the holding of office including the civil functions of tutor, under tutor, curator, under curator, administrator, executor, arbitrator, and notary public.

La. R.S. 9:51.  Section 51 provides protection to women, ensuring that they share equal privileges with men with respect to holding offices and serving on boards.  Thus, based on the plain language of the statute, Section 951 does not provide a cause of action for McCoy because he is a male.  Summary judgment in favor of Defendants is, therefore, **GRANTED** on McCoy's La. R.S. 9:51 claim.

## CONCLUSION

Based on the foregoing Memorandum Ruling, the Court finds that McCoy's Section 1983, Section 1985, Section 1986, Equal Protection claims are time barred; there is no individual liability under Title VII or Section 1981; McCoy has failed to establish a *prima facie* case of racial discrimination under Title VII or Section 1981; and La. R.S. 9:51 provides no cause of action in this matter.  Accordingly, the Motions for Summary Judgment (Record Documents 88 and 90) filed by Defendants are **GRANTED** and all of McCoy's claims are **DISMISSED**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 18th day of May, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE